**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATURAL AND TASTY, LLC, | Civil Action No.: 15-cv-4388 |
| Plaintiff, | |
| v. | OPINION |
| MOSHE PARNES, | |
| Defendant. | |

**CECCHI, District Judge.**

### I.     INTRODUCTION

This matter comes before the Court on the application of Plaintiff Natural and Tasty, LLC ("Plaintiff") for an Order to Show Cause why a preliminary injunction should not issue. ECF No. 1. On July 9, 2015, the Court issued the Order to Show Cause and scheduled the Show Cause hearing for July 22, 2015 at 10:00 a.m., indicating that if the Court received no opposition from the Defendant Moshe Parnes ("Defendant"), the application would be decided on the papers. See Order to Show Cause ("OTSC"), ECF No. 5. Defendant did not file any written response to the OTSC and did not appear in person at the Show Cause hearing. Thus, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, Plaintiff's application for a preliminary injunction is granted in part and denied in part.

1

## II. BACKGROUND

### A. Factual Background[1]

Plaintiff, a New Jersey-based food distributor specializing in the "natural and organic Kosher food market," purchased Goldbaums Natural Food Co. ("Goldbaums") in March 2011. Amended Verified Complaint ("Am. Compl."), ECF No. 4, at ¶¶ 7-9. Plaintiff's purchase of Goldbaums included common law trademark rights in the Goldbaums name, and Plaintiff has been selling Goldbaums food products with the Goldbaums branded label in local and national markets since 2011. Id. at ¶¶ 10-11. Plaintiff formally registered the Goldbaums trademark with the U.S. Patent and Trademark Office on September 16, 2014. Id. at ¶ 13. Plaintiff contends that its extensive use of the Goldbaums brand "has created a direct association in the minds of the relevant consuming public between the goldbaums mark and [Plaintiff's] products." Id. at ¶¶ 19, 23. Plaintiff uses the domain name www.goldbaums.com to direct customers to its website, which provides information about Goldbaums products. Id. at ¶¶ 21- 22.

Defendant is the founder of Goldbaums. Id. at ¶ 8. After Plaintiff purchased Goldbaums, Defendant served as Plaintiff's Director of Product Development. Id. at ¶ 14. As Director of Product Development, Defendant controlled the domains and websites relating to Goldbaums' business, including www.goldbaums.com, and had control over email addresses using the @goldbaums.com domain name. Id. at ¶ 15. Defendant's employment with Plaintiff ended by mutual agreement on February 13, 2015. Id. at ¶ 24. When he left, Defendant sent an email to

---

[1] The Factual Background section will constitute the Court's findings of fact. The Court considers the facts in Plaintiff's Verified Complaint and in the Certification of Moshe Oshry, which are both uncontested, as true for the purposes of this motion. The Court disregards any legal conclusions contained therein, however. The Discussion section of this Opinion will constitute the Court's conclusions of law. Federal Rule of Civil Procedure 52.

2

several of Plaintiff's vendors indicating that he was "no longer employed at Natural and Tasty/Goldbaums," but that he hoped to work with them in the future, which Plaintiff interpreted as an attempt to solicit their business. Certification of Moshe Oshry, ECF No. 4-3 ("Oshry Cert."), at ¶¶ 15-16. After that, Defendant "seized control" of the website by changing the passwords used to control the website, and continued to control several email addresses using the @goldbaums.com domain name. Am. Compl. ¶¶ 25-26. Defendant also removed cellular devices that belong to Plaintiff and for which he was the Point of Contact during his employment, and Plaintiff alleges that Defendant continues to use the devices "to conduct business on behalf of [Plaintiff]." Id. at ¶¶ 31-33.

Plaintiff alleges that Defendant is using the moe@goldbaums.com email address in particular to "send and intercept emails intended for [Plaintiff]" and to "redirect[ Plaintiff's] vendors to the wrong parties." Id. at ¶ 28. Plaintiff is not receiving emails sent to several @goldbaums.com email addresses, id. at ¶ 38, and test emails sent to those addresses are returned as undeliverable, Oshry Cert. ¶ 34. At least one customer of Plaintiff was initially unable to reach Plaintiff at one of the @goldbaums.com email addresses, as the message was returned as undeliverable. Id. at ¶ 37. Defendant has not responded to Plaintiff's demands that he relinquish control of the website, Am. Compl. ¶¶ 35-37, and attempts to negotiate with Defendant for return of control over the domain name were unsuccessful, Oshry Cert. ¶ 32.

### B. Procedural Background

Plaintiff filed a Verified Complaint and application for an Order to Show Cause why a preliminary injunction should not issue in this Court on June 25, 2015. ECF No. 1. Plaintiff since filed an Amended Verified Complaint and application for Order to Show Cause on July 8, 2015. ECF No. 4. Plaintiff asserts the following claims against Defendant: (1) false designation

3

of origin under the Lanham Act, 15 U.S.C. § 1125(a); (2) dilution under the Lanham Act, 15 U.S.C. § 1125(c); (3) cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); (4) common law trademark infringement; and (5) common law trade name infringement. Plaintiff also filed a certification and affidavit detailing Plaintiff's unsuccessful efforts to give notice to the Defendant via personal service and why personal service should not be required. ECF No. 4-4. Accordingly, the Court issued the Order to Show Cause and permitted Plaintiff to serve Defendant via certified mail, return receipt requested, and simultaneously by regular mail, to Defendant at his home and business address. OTSC ¶ 1.[2] Plaintiff served Defendant with the Order to Show Cause, Summons, Verified Complaint and accompanying brief and Certifications on July 10, 2015. Certificate of Service, ECF No. 6.

Defendant did not appear at the Show Cause hearing or otherwise respond to the Order to Show Cause. In the instant application, Plaintiff seeks an order preliminarily enjoining Defendant from: (1) using or registering the Goldbaums trademark or any imitation thereof or using any other terms that infringe or dilute the mark; (2) from using Goldbaums as a trade name or corporate name; (3) from using, offering to sell or otherwise trafficking in the goldbaums.com domain name or other domain names relating to Plaintiff's business or the goldbaums brand; (4) from using, offering to sell or otherwise trafficking in any email addresses utilizing the @goldbaums.com domain name or other domain names relating to Plaintiff's business or the

---

[2] This method of service is consistent with Federal Rule of Civil Procedure 4(e), which permits service according to the law of the state where the district court is located. New Jersey law permits service on an individual by "registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to . . . the individual's dwelling house or usual place of abode," if it appears by affidavit that despite diligent effort and inquiry personal service cannot be made. See N.J. Court Rule 4:4-4(b)(1)(C).

4

Goldbaums brand; and (5) from using cellular devices or numbers belonging to Plaintiff to conduct business relating to Goldbaums or Natural and Tasty. Plaintiff further asks the Court to order Defendant to transfer or make available to Plaintiff all passwords, codes or other information that will allow Plaintiff to regain full control of the goldbaums.com domain name or other domain names relating to Plaintiff's business, and any email addresses using the @goldbaums.com domain name or other domain names relating to Plaintiff's business.

### III. LEGAL STANDARD

The decision whether to grant or deny a request for a preliminary injunction rests in the discretion of the Court. See Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). A party seeking the extraordinary remedy of a preliminary injunction bears the burden of establishing that the following four factors weigh in favor of granting the injunction: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest." Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014) (quoting Winter v. NRDC, 555 U.S. 7, 20 (2008)). "It has long been recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue." Williams v. Curtiss-Wright Corp., 681 F.2d 161, 163 (3d Cir. 1982).

### IV. DISCUSSION

#### A. Likelihood of Success on the Merits

Based on the uncontested evidence before the Court, Plaintiff has a reasonable likelihood of success on the merits of its ACPA claim. To prevail on a request for a preliminary injunction under the ACPA, which amended § 43 of the Lanham Act, see 15 U.S.C. § 1125(d), Plaintiff

5

must show a likelihood of success as to the following three elements: (1) the mark is "distinctive" or "famous" and therefore protected under the ACPA; (2) the allegedly infringing domain name is "identical or confusingly similar" to the mark; and (3) defendant had a bad-intent to profit from the mark. Advance Magazine Publishers Inc. v. Vogue Int'l, 123 F. Supp. 2d 790, 798 (D.N.J. 2000); see also Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001) ("Shields II").

When determining whether the mark is distinctive or famous, the Court may consider the following factors:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

The Court is not aware of any competing Goldbaums brand used in connection with the marketing and selling of natural and organic Kosher food products or otherwise, which supports the inherent and acquired distinctiveness of the mark. See Shields v. Zuccarini, 89 F. Supp. 2d 634, 638-39 (E.D. Pa. 2000) ("Shields I"). Plaintiff asserts that it has used the Goldbaums mark in connection with its food products for over four years, including in "electronic and written materials, and product materials." Am. Compl. ¶ 19. Plaintiff has promoted its products and services using the Goldbaums mark in the New York/New Jersey metropolitan area and throughout the country, including through its website, and contends that this has created an

exclusive association between the mark and Plaintiff's products in the minds of the "relevant consuming public." Id. at ¶¶ 19-21. This suggests that the duration and extent of the use of the mark in connection with the goods or services provided by Plaintiff, as well as the duration and extent of the advertising and publicity of the mark over a large geographical area, are significant. See Shields I, 89 F. Supp. 2d at 638-39; Shields II, 254 F.3d at 482-83 (finding that longevity of use of mark, where plaintiff had used mark for fifteen years and associated domain name for three years, suggested mark had acquired some fame in marketplace, and that website marketing plaintiff's brand gave mark "a global reach"). Finally, the mark is registered on the principal register. Am. Compl., Ex. 1. Thus, the goldbaums mark and goldbaums.com domain name appear to be protected under the ACPA.

As to the ACPA claim's second element, the allegedly infringing domain name is identical to the mark in this case. Finally, as to Defendant's "bad faith intent to profit" from the mark, Plaintiff has demonstrated a reasonable likelihood of success. When assessing the bad faith intent of the defendant to profit from the mark, the Court should consider the nine non-exclusive factors set forth in the ACPA, as well as "any other elements of bad faith."[3] Advance

---

[3] The factors are: (I) the trademark or other intellectual property rights of the person [the defendant], if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the

Magazine, 123 F. Supp. 2d at 799; see also Green v. Fornario, 486 F.3d 100, 106 (3d Cir. 2007) ("[A]pplying the factors is a holistic, not mechanical exercise . . . .").

Here, Defendant does not own the trademark or other intellectual property rights in the goldbaums.com domain name and the domain name is not Defendant's name (factors I and II). The extent to which the mark is distinctive or famous (factor IX) appears significant based on the averments of Plaintiff. Defendant did use the Goldbaums mark previously in connection with his employment with Plaintiff, and based on the evidence presented by Plaintiff, Defendant is not making a noncommercial, fair use of the mark now (factors III and IV). Defendant did not register a new domain name using misleading contact information, but he improperly kept control of Plaintiff's existing domain name (factor VII). There is no allegation that Defendant has engaged in a pattern of acquiring domain names identical or confusingly similar to others' marks (factor VIII).

Although there is no indication that Defendant is diverting consumers from the mark owner's online location to another site (factor V), and there has been no offer to transfer, sell or otherwise assign the domain name to the mark owner or a third party for financial gain (factor VI), Defendant's refusal to return control of the website to Plaintiff suggests that he intends to use his control over the domain name as leverage. Other evidence of bad faith includes: Defendant's abrupt termination of negotiations with Plaintiff for return of control of the domain names, Oshry Cert. ¶ 32; Defendant's email to Plaintiff's vendors upon his departure from

---

person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names . . . ; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of § 1125(c)(1).

Plaintiff, which appeared to be soliciting their business, id. at ¶¶ 15-16; Defendant's removing and continuing to use cellular devices belonging to Plaintiff, id. at ¶¶ 22-26; and Defendant's evident attempts to evade service and refusal to answer in this action, Certification Pursuant to Rule 65(b)(1)(B), ECF No. 4-4. Considering the allegations and evidence of Defendant's conduct holistically, Plaintiff has shown Defendant's bad-faith intent to profit from the mark. See DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1221 (9th Cir. 2010) (interpreting "intent to profit" factor to mean "intent to get money or other valuable consideration," or "an attempt to procure an advantageous gain or return"). Therefore, Plaintiff has shown a likelihood of success on its ACPA claim and this factor weighs in favor of granting a preliminary injunction.

As to Plaintiff's trademark infringement claims under 15 U.S.C. §§ 1125(a) and 1125(c), the Court requires further briefing on those claims and therefore the Court will deny the request for a preliminary injunction, without prejudice, as to Defendant's use of the Goldbaums mark outside registration, traffic or use of a domain name. See Advance Magazine, 123 F. Supp. 2d at 798 n.12 ("A violation of the ACPA would not entitle plaintiff to an injunction against defendant's use of the terms [similar to the mark at issue] outside registration, traffic or use of a domain name."). A claim under 15 U.S.C. § 1125(a) consists of three elements: (1) plaintiff has a valid and legally protectable mark; (2) plaintiff owns the mark; and (3) "the defendant's use of the mark to identify goods or services causes a likelihood of confusion concerning the origin of the goods or services." Advance Magazine, 123 F. Supp. 2d at 795; A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).[4] Section 1125(c) of the same title provides that:

---

[4] Plaintiff notes that the test for its state law trademark infringement claims is the same as the test for federal infringement. See Pharmacia Corp. v. Alcon Labs., Inc., 201 F. Supp. 2d 335,

the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c).

Here, by contrast with the case law on which Plaintiff relies, the Plaintiff has not shown that Defendant is actually using the Goldbaums mark to identify goods or services in a way that causes a likelihood of confusion as to the source of those goods or services. See Advance Magazine, 123 F. Supp. 2d at 792 (defendants used marks similar to plaintiff's "in connection with web based retail business" offering clothes, cosmetics and accessories for sale); A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 206 (3d Cir. 2000) (defendant lingerie retailer accused of infringing mark of swimwear manufacturer); Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472-73 (3d Cir. 1994) ("[L]ikelihood of confusion . . . exists 'when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'") (internal citation omitted). Further, Plaintiff does not explain how, under statutory or case law, Defendant is using the mark in a way that is likely to cause dilution by blurring or dilution by tarnishment of the mark. Thus, Plaintiff has not shown a likelihood of success on the merits for its trademark claims at this time. Plaintiff may submit further briefing on this issue for the Court's consideration.

---

386 (D.N.J. 2002) (noting that "in the Third Circuit the test for common law infringement and unfair competition [in New Jersey] is identical to the test for federal infringement and unfair competition"); see also Apollo Distrib. v. Jerry Kurtz Carpet Co., 696 F. Supp. 140, 143 (D.N.J. 1988) (same).

10

### B. Irreparable Harm

Plaintiff argues that it will suffer irreparable harm in the absence of injunctive relief, as Plaintiff's lack of control over the website and email domains is likely to cause consumer confusion and to harm Plaintiff's and its brand's reputations. Pl.'s Br. 8-10. "[A] party seeking a preliminary injunction in a Lanham Act case is not entitled to a presumption of irreparable harm but rather is required to demonstrate that she is likely to suffer irreparable harm if an injunction is not granted." See Ferring Pharms., 765 F.3d at 217. Here, Plaintiff has shown that a customer has actually experienced difficulty contacting Plaintiff at the email addresses now improperly controlled by Defendant, which could cause harm to Plaintiff's reputation. Given that Plaintiff's website is an important method of communicating to customers about its brand, the potential for harm to Plaintiff's reputation is likely if the website is left in the control of Defendant. Cf. Shields v. Zuccarini, 254 F.3d at 486 (holding that district court properly determined that plaintiff would be irreparably harmed where plaintiff would suffer damage to his reputation and loss of goodwill as a result of defendant's operation of allegedly infringing websites, as plaintiff's "livelihood and fame depend, in large part, on Internet users being able to access his sites"). Here, Defendant's interference with Plaintiff's ability to represent its brand on the internet and contact customers causes a risk of irreparable harm.

### C. Balance of the Equities

Plaintiff argues that the balance of the equities tilts in its favor because Defendant "should not control" the website and domain names that he now controls, and thus the relief requested would impose no burden on the Defendant. Pl.'s Br. 9-10. The Court agrees that, based on the evidence presented to date, any burden to the Defendant in complying with the preliminary injunction would be minimal.

11

### D. Public Interest

Plaintiff argues that the public interest would be served by a preliminary injunction here because "Defendant Parnes' unscrupulous conduct confuses the public because he has taken away [Plaintiff's] ability to communicate with the public via its website, associated emails, and cellular devices." Pl.'s Br. 10. The Court agrees that enjoining Defendant's conduct here would be in the public interest, as it will enable Plaintiff to resume effective communication with its customers and the public at large through its website.

### V. CONCLUSION

Based on the foregoing, Plaintiff's motion for a preliminary injunction is granted in part and denied in part. An appropriate order accompanies this Opinion.

DATED: August 10, 2015

CLAIRE C. CECCHI, U.S.D.J.

12